UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

TRAVIS S.,                                                  Case No. 22-CV-2289 (PJS/TNL)

          Plaintiff,

v.                                                          ORDER

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

          Defendant.

Clifford M. Farrell, MANRING & FARRELL, for plaintiff.

Emily Carroll, SOCIAL SECURITY ADMINISTRATION, for defendant Kilolo Kijakazi.

In this lawsuit, plaintiff Travis S.[1] challenges the Social Security Administration's denial of his application for disability benefits.  Now before the Court are the parties' cross-motions for summary judgment.  For the reasons that follow, defendant Kilolo Kijakazi's ("the Commissioner's") motion is granted, and Travis's motion is denied.

## I.  BACKGROUND

Travis filed an application for disability insurance and supplemental security income benefits in July 2019.  Admin. Rec. [ECF No. 11] at 100-01.  Travis's application alleged that he became disabled on April 1, 2013, as a result of traumatic brain injury,

───────────────

[1]This District has adopted the policy of using only the first name and last initial of nongovernmental parties in orders entered in Social Security cases.

attention-deficit disorder, dyslexia, long-sleep syndrome, anxiety, obsessive-compulsive

disorder, depression, and bipolar disorder.  *Id.*; *see also id.* at 84, 92.

An individual is deemed to be disabled and entitled to receive Social Security

disability benefits if he is "unable to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  An individual is disabled

"only if his physical or mental impairment or impairments are of such severity that he is

not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in

the national economy."  *Id.* § 1382c(a)(3)(B).  "[A] physical or mental impairment is an

impairment that results from anatomical, physiological, or psychological abnormalities

which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques."  *Id.* § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step process to determine

whether an individual is disabled.  20 C.F.R. § 416.920(a)(4).  At step one, the claimant

must establish that he is not engaged in any "substantial gainful activity."  *Id.*

§ 416.920(a)(4)(i).  If he is not, the process moves to step two.  At step two, the claimant

must establish that he has a severe medically determinable impairment or combination

of impairments. *Id.* § 416.920(a)(4)(ii).  If he does, the Commissioner must, at step three, find that the claimant is disabled if his impairment meets or is medically equal to one of the listings in 20 C.F.R. Part 404, Subpart P, App'x 1. *Id.* § 416.920(a)(4)(iii).  If the claimant's impairment does not meet or is not medically equal to one of the listings, the process moves to step four.

At step four, the claimant bears the burden of establishing his residual functional capacity ("RFC") and proving that, in light of his RFC, he cannot perform any past relevant work. *Id.* § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  If the claimant proves that he is unable to perform any past relevant work, the process moves to step five.  At step five, the Commissioner has the burden to establish that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the claimant can perform such work, the Commissioner will find the claimant not disabled.  20 C.F.R. § 416.920(a)(4)(v).

Travis's application for benefits was initially denied and then denied again on reconsideration.  Admin. Rec. at 135–40, 144–47.  In June 2021, at Travis's request, an Administrative Law Judge ("ALJ") held a hearing on his application.  Travis testified at the hearing and was assisted by a non-attorney representative. *Id.* at 51–83.

After the hearing, the ALJ determined that Travis had several severe impairments, including anxiety disorder, major depressive disorder, post-traumatic stress disorder ("PTSD"), and alcohol-use disorder. *Id.* at 33. The ALJ found, however, that the impairments did not meet or medically equal any listed impairments. *Id.* at 33–36. The ALJ determined that Travis had the capacity for a full range of work at all exertional levels with some limitations, including that Travis was limited to routine, repetitive instructions, and succinct interactions with coworkers and the general public. *Id.* at 36. The ALJ concluded that there were jobs that Travis could perform in the national economy, and thus that Travis was not disabled. *Id.* at 40–41. The Appeals Council denied Travis's request for review of the ALJ's decision, and this lawsuit followed. *See* 42 U.S.C. § 405(g) (providing for judicial review of final decisions of the Commissioner of the Social Security Administration).

## II.  ANALYSIS

### A.  *Standard of Review*

The Court's review of the Commissioner's decision is limited to determining whether that decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence . . . is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold . . . is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

### B. State Agency Psychologist's Opinion

Travis first contends that the ALJ erred by not incorporating all of the restrictions that a state-agency psychologist recommended, despite finding the psychologist's opinions persuasive. Travis argues that because the state-agency psychologist opined that Travis's contact with others should be limited to "superficial" interactions, Admin. Rec. at 112, the ALJ erred in determining that Travis could have "succinct" contact with coworkers and the public. According to Travis, the ALJ's determination failed to address Travis's ability to interact with his supervisors and also failed to account for the state-agency psychologist's recommendation that he be limited to "superficial" interactions.

Travis's contention that the ALJ erred in failing to impose any limitations on his contact with supervisors is without merit. The state-agency psychologist found that Travis was not significantly limited in his ability to accept instructions and respond appropriately to criticism from supervisors. *Id.* The psychologist's opinion that Travis

should be limited to superficial contact was made in the context of Travis's "[a]bility to deal with co-workers and the public," which the psychologist noted would be "somewhat restricted . . . [and] adequate for superficial contact, but not sustained close contact." *Id.*

Nor is Travis correct that the ALJ's "succinct" restriction addressed only the *frequency* of interactions and failed to address the *quality* of interactions. Travis asserts that there is a substantive difference between "superficial" and "succinct," and that it was erroneous for the ALJ to find that Travis could have "succinct" interactions with coworkers and the public when the state-agency psychologist limited him to "superficial" interactions.

Travis relies on the difference between "occasional" and "superficial" contact that has been described in several court decisions and in a recent Appeals Council notice. According to these opinions, "'occasional' . . . refer[s] to the *quantity* of time spent with individuals, whereas 'superficial' refers to the *quality* of the interactions." *Watson v. Kijakazi*, No. 21-CV-120-WMC, 2022 WL 325586, at *4 (W.D. Wis. Feb. 3, 2022). Travis argues that the ALJ's use of "succinct" is akin to "occasional" and thus does not properly incorporate the "superficial" limitation recommended by the state-agency psychologist. But the word "succinct"—which is commonly defined to mean "concise" or "terse"— encompasses both quantitative and qualitative limitations. *Succinct*,

Merriam-Webster Dictionary, available at https://www.merriam-webster.com /dictionary/succinct.  By restricting Travis to "succinct" interactions with his coworkers and the public, the ALJ did not meaningfully vary from the "superficial" restriction recommended by the state-agency psychologist.

Moreover, even if the ALJ's restriction is not the same as the restriction recommended by the state-agency psychologist, it is the ALJ, and not the state-agency psychologist, who has ultimate responsibility for determining Travis's limitations.  *See* 20 C.F.R. § 404.1546(c); *see also Mark S. v. Saul*, No. 18-CV-2936 (HB), 2020 WL 1043795, at *7 (D. Minn. Mar. 4, 2020) ("The ALJ is responsible for assessing a claimant's RFC."). The ALJ "is not required to adopt all limitations proposed by Plaintiff's healthcare providers—even if the ALJ has accorded that provider's opinion substantial weight." *Mark S.*, 2020 WL 1043795, at *6.  Rather, the RFC must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations."  *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quotations omitted).

Here, the ALJ noted that Travis described his work taking tickets for a carnival ride at the Minnesota State Fair as a "great experience."  Admin. Rec. at 38.  Such work would necessarily entail extensive interaction with the public.  Travis also enjoys playing basketball, *id.* at 39, another activity that involves significant interaction with

others.  And a caseworker noted that Travis was friendly and got along with others.  *Id.*

at 401.  Substantial evidence supports the ALJ's determination regarding Travis's

capacity to interact with the public, coworkers, and supervisors.

### C.  *Supportability and Consistency Analysis*

Travis also asserts that the ALJ erred in evaluating a medical-source statement

from David Kearn, a therapist who examined Travis on a single occasion.  *Id.* at 919–22.

After that examination, Kearn filled out a check-a-box form regarding Travis's

limitations, checking "marked" on seven of 22 levels of functioning.  *Id.* at 921.  Kearn

did not, however, elaborate on the reasons for his opinions or describe any testing that

he may have done of Travis.  Perhaps not surprisingly, the ALJ did not find Kearn's

opinions persuasive.  *Id.* at 40.  Travis argues that the ALJ did not properly explain why

he found Kearn's opinions unpersuasive, complaining specifically that the ALJ failed to

consider the supportability of Kearn's opinions.

An ALJ must "evaluate the persuasiveness of medical opinions by considering

(1) whether they are supported by objective medical evidence, (2) whether they are

consistent with other medical sources, (3) the relationship that the source has with the

claimant, (4) the source's specialization, and (5) any other relevant factors."  *Bowers v.*

*Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)).  "The first two

factors—supportability and consistency—are the most important."  *Id.* (citing 20 C.F.R.

§ 404.1520c(a)).  But "the ALJ is not required to explicitly reconcile every conflicting shred of medical evidence."  *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (cleaned up).

The ALJ noted that the opinions of Kearn (who, as noted, saw Travis only once) were inconsistent with the other evidence of Travis's mental-health treatment, which showed no more than a moderate limitation in Travis's ability to function.  Admin. Rec. at 40.  Travis argues that the ALJ's discussion was insufficient, asserting that the ALJ was required to point to specific evidence in the record that contradicted Kearn's opinions.  But the ALJ's thorough discussion of Travis's mental-health treatment records provides the specific evidence contradicting Kearn's opinions that Travis contends is lacking.  The ALJ did not need to repeat himself; it is sufficient that the ALJ recounted Travis's treatment history and found that Kearn's opinion that Travis had marked limitations was contrary to that history.

An opinion "rendered on a check-box and fill-in-the-blank form" is "entitled to relatively little evidentiary value on its face."  *Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022).  An ALJ does not err in giving such forms little weight, especially when other objective evidence in the record does not bear out the form's restrictions.  *Id.*  An ALJ properly considers the supportability and consistency of any opinion when the ALJ determines that the opinion is inconsistent with the record, including the claimant's

treatment plan, other medical opinions, and the claimant's description of his activity

level. *Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023).  The ALJ appropriately weighed

the supportability and consistency of Kearn's opinion and properly discounted that

opinion.  The ALJ's conclusion that Kearn's opinion was unpersuasive is consistent with

the law and supported by substantial evidence.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for summary judgment [ECF No. 16] is DENIED.

2. Defendant's motion for summary judgment [ECF No. 19] is GRANTED.

3. Plaintiff's complaint [ECF No. 1] is DISMISSED WITH PREJUDICE AND

   ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  September 18, 2023

s/Patrick J. Schiltz
Patrick J. Schiltz, Chief Judge
United States District Court